### Jacob Wenz *v.* The State.

1. **Theft—Mental Condition.**—Though drunkenness cannot of itself constitute an excuse for crime, yet, in cases which involve intention as well as acts, as in the crime of theft, it may be proper to hear proof of the drunkenness of the accused at the time of the commission of the act, in order to test his capacity at that time to distinguish between right and wrong.

2. **Drunkenness.**—This court declines to lay down a rule relative to the class of cases in which such proof is admissible, or the extent to which it is

admissible, as tending to show the mental condition of the accused; but it should be accompanied with proper instructions to the jury.

APPEAL from the District Court of Bexar. Tried below before the Hon. GEORGE H. NOONAN.

The case is fully stated in the opinion of the court.

*C. K. Breneman,* for the appellant.

*A. J. Peeler,* Assistant Attorney General, for the State.

WINKLER, J. The appellant was tried and convicted in the district court of Bexar county on an indictment charging that he " unlawfully, fraudulently, and feloniously did steal, take, and carry away from the house of Juan Flores, and from the possession of Juan Flores, one shawl, of the value of three dollars, the property of Juan Flores, without the consent of said Juan Flores, and with the fraudulent and felonious intent to deprive the said Juan Flores of the value of said shawl, and to appropriate said shawl to the use of him, the said Jacob Wenz, contrary," etc.

On the trial the accused requested certain charges to be given to the jury, which were refused.

A motion was made for a new trial, on the part of the defendant, in which two grounds are alleged as a reason why the motion should be sustained. " 1st. The court erred in refusing to charge the jury as to the law applicable to the case, as requested by the defendant in the charge upon file, and part of the record herein. 2d. The verdict is contrary to law and the evidence." The motion for new trial was overruled, and the defendant in open court gave notice of appeal.

The appellant assigns as error the refusal of the judge to give the charge requested by him on the trial ; that the court erred in refusing to charge all the law applicable to the case, and also in overruling the defendant's motion for new trial.

It appears from the transcript that the parties and their attorneys failed to agree upon a statement of facts, and that the evidence was made up and certified by the judge who presided at the trial. After stating the evidence of the state's witness, Juan Flores, on direct and cross-examination, and the defendant's witnesses, Jose Wells, Billy Menger, and Ferdinand Hahn, and in rebuttal the state's witness, H. D. Bonnet, the statement of facts may be summarized as follows:

The defendant went to the store of one Hader; it was apparent when he came there that he had been drinking. He called for beer, and drank eight glasses in succession. He then went out of Hader's store, and across the street to the store of a person named Smith. Miss Smith, a young lady, was in the store at the time defendant came in and asked her for beer; she said she had no beer. He then asked her for whisky; she said she had no whisky, and told him he had better leave the store pretty quickly. He then ran out of the store, down the street, and into the house of a Mexican named Juan Flores. He took down a shawl that was hanging on a peg in the wall, worth $2, and ran out of the door, across an open lot. The Mexican, who happened to be in the house at the time, upon being told by a little boy, who stood near the door by which the defendant entered and left the house, that a man had taken the shawl, started in pursuit of the defendant, and caught him before he had got more than 300 yards away from the house. The defendant at once gave up the shawl, and Flores marched him off to a police officer. The defendant made no resistance, and was very drunk. He had been employed in the city as a baker, but had been discharged by various employers for drunkenness. It appeared also that he had been sent to the penitentiary for attempting to rob a safe, or something of the kind, and that he had been pardoned out. The state's witness, Juan Flores, proves

the time of the alleged taking as on the morning of the 10th day of May, 1875, just after breakfast; the ownership of the shawl and house, and that the defendant did not have permission to enter his house and take the shawl; that there was no person in the house when the defendant took the shawl. He proved the venue as in Bexar county, and he stated that *the door was partially closed.*

On this statement of the facts, was the charge asked by the defendant a proper one to have been given to the jury?

From the evidence introduced on the trial, and the charges refused, it seems that the theory of the defense was that, at the time the house was entered and the shawl taken, the defendant was too drunk to know what he was doing. It is not contended by counsel that drunkenness is an excuse for crime; but that, inasmuch as the question of intent is necessarily an ingredient of the crime of theft, if the defendant, at the time he entered the house and took the shawl, was too drunk to know what he was doing, he had not sufficient mental capacity to form a felonious intent to take the property of its owner and appropriate it to his own use.

To what extent one accused of crime may screen himself from the penalty attached to the crime alleged, by the plea of drunkenness, appears not to be laid down in our system of criminal procedure, and, in fact, ought not to be prescribed. Should such a thing be attempted, the vicious would doubtless take advantage of it to screen themselves from the just consequences of their crimes. Our own laws being silent on a given subject, we are required to go to the common law for a rule by which to be governed. See Art. 27 of the Penal Code; Pasc. Dig., Art. 2493; and *Calvin* v. *The State,* 25 Texas, 795.

When we go to the common law, as treated by Lord Coke and Sir William Blackstone, we are met at the very

threshold of investigation by such expressions as the following :

" As to artificial madness, voluntarily contracted by *drunkenness* or intoxication, which, depriving men of their reason, puts them in a temporary frenzy, our own law looks upon this as an aggravation of the offense, rather than an excuse for any criminal misbehavior." 4 Bl. Com. 256.

" A drunkard, who is *voluntarius dæmon*, hath no privilege thereby ; but what hurt or ill soever he doeth, his drunkenness doth aggravate it." 1 Inst. 247.

Yet, notwithstanding these strong expressions of the authors quoted, and which go to the foundation of the generally received opinion that drunkenness will not, *per se*, excuse the commission of crime, we are not prepared to say that, in a charge involving act and intention both, as is the crime of theft, there are not cases in which it may be proper to inquire into the mental condition of the accused in order to test his capacity to distinguish between right and wrong. *Ferrell* v. *The State*, 43 Texas, 503 ; *Carter* v. *The State*, 12 Texas, 500.

It should be borne in mind, however, that the learned judge who delivered the opinion in *Carter* v. *The State* did not decide, but merely discussed, the question.

From the investigation we have been able to give the subject, and without intending to lay down a rule as to how far the condition of drunkenness may be inquired into, as tending to show the mental condition of a person accused of crime at the time the act was committed, we are of the opinion that these are matters which ought to be submitted to the jury under proper instructions ; and that the propriety of giving or refusing charges asked on the proposition must necessarily depend upon the peculiar circumstances attending each particular case, as developed by the evidence adduced on the trial.

We are also of the opinion that, testing this case by the light afforded in the statement of facts, the court, in favor of liberty, might with propriety have submitted to the jury the question of the capacity of the accused to judge between right and wrong at the time he took the shawl, as asked in the charge refused; ·or, if the charge asked did not, in the mind of the judge, express the law applicable to the facts, that he should have made the proper qualification, thus calling attention to this point.   Pasc. Dig., Art. 3061.

We are of opinion the court erred in refusing to charge the jury on this proposition, and in overruling the defendant's motion for a new trial; and for these errors the judgment is reversed and the cause remanded.

*Reversed and remanded.*